## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF YORK, MAY TERM, 1805, AT YORK.

———◆———

### THOMAS BARTLET *versus* ABRAHAM KNIGHT.

A judgment recovered in another of the United States is not, in all cases, con-
clusive evidence of a debt, in an action of debt brought *here*, on such judg-
ment. Although the mode of authenticating such judgments has been provided
for by the act of congress, yet the *effect* of such authentication is not declared
by the act.

THIS was an action of debt on a judgment recovered in the state
of *New Hampshire.* The defendant was, in the present action,
described as of *Poland,* in the county of *Cumberland,* in the com-
monwealth of *Massachusetts.*

The defendant prayed oyer of the record of the judgment
mentioned in the declaration, (which was as follows, *viz.,* "State of
*New Hampshire, Rockingham, ss.* At the inferior Court of Com
mon Pleas, holden at *Exeter,* within and for the county of *Rocking-
ham,* on the second Tuesday of August, Anno Domini one thousand
seven hundred and ninety-one. Present the Honorable *Timothy
Walker, John Calfe,* and *William Parker, Esqrs.,* justices of said
court. *Thomas Bartlet* of *Nottingham, Esq.,* plaintiff, against
*Abraham Knight, Jun., late* of *Nottingham,* aforesaid, yeoman,
defendant, in an action of the case, for that the said
[ * 402 ] *Abraham,* at said *Nottingham,* on the * twenty-first day
of September, Anno Domini 1784, by his note of that
date by him signed, for value received, promised to the plaintiff to

296

pay him or his order the sum of twenty-eight pounds, ten shillings, lawful money, to be paid in good merchantable Indian corn, at or before the 20th day of December, Anno Domini 1785, delivered at the said *Bartlet's* house, at cash price, with interest till paid. Yet, though said time is past, and though requested, the said *Abraham* has not paid said sum, or the interest in corn as aforesaid, nor has he in any other way paid the same, but neglects it. To the damage of the said *Thomas*, as he says, the sum of forty-five pounds. This action was commenced at the inferior Court of Common Pleas, for said county of *Rockingham*, February term last, and continued from term to term, until this term ; and now, at this term, the said *Abraham Knight, Jun.*, being three times solemnly called, appeared not, but made default; and the plaintiff appearing and proving his declaration, it is therefore considered by the Court that the plaintiff recover against the said *Abraham Knight, Jun.*, £40 2s. 7d. damage, and costs of suit, taxed at £3 1s. 3d., by the plaintiff in that behalf expended. Execution issued August 29, 1791, and returned satisfied in part, *viz.*, for the sum of £27 9s.") and then pleaded in bar that, at the time of signing the note, mentioned in the judgment, and at the time of making the promise therein mentioned, he was an infant, under the age of twenty-one years, *viz.*, of the age of fourteen years, and no more.

The defendant, by the leave of Court, pleaded a second plea in bar, in which he alleged that, at the time of making the promise, and at the time when the said judgment was rendered thereon, and during all the time between the time of making the note and promise, and the recovery of said judgment, and ever since, he was, has been, and still is, * an inhabitant of and [ * 403 ] resident in said town of *Poland*, and at the time of signing the note and making the promise, and at the time of the recovery of the judgment, that he was a minor, under the age of twenty-one years ; that is, at the time of the recovery of said judgment, of the age of twenty years, and no more.

General demurrer to both the pleas, and joinder.

This case was argued at a former term. And it was now said, by the counsel for the plaintiff, that by the constitution of the *United States*, and by the law of congress, the judgment was conclusive evidence of a debt, and could not be called in question in the manner attempted by the pleas of the defendant. In *sect.* 1 of the 4th article of the constitution, it is declared that " Full faith and credit shall be given, in each state, to the public acts, records, and judicial proceedings, of every other state. And the congress may by general laws prescribe the manner in which such acts,

records, and proceedings, shall be proved, and the effect thereof." That the act of congress (a) having, pursuant to the article in the constitution, prescribed the mode in which the acts, records, and judicial proceedings, in each state, shall be authenticated, and having declared that the said records, &c., so authenticated, "shall have such faith and credit given to them in every court within the *United States* as they have by law or usage in the courts of the state from which they are or shall be taken," has by necessary implication declared the effect of a judgment to be the same in every state that it has in the state where it was rendered. The faith and credit that in the state of *New Hampshire* would be given to the judgment on which the present action is brought, would be such [ * 404 ] that it would be absolutely incontrovertible * evidence of a debt; and nothing which tended to impeach the validity of the recovery of the judgment, would *there* be permitted to be pleaded in bar to an action of debt upon it; and therefore a plea of that sort cannot be allowed *here*. By the *constitution* and the *act*, these judgments have the same force and effect, so far as respects the question now before the Court, as one of our own domestic judgments; and consequently the pleas in bar are bad.

·For the defendant, it was said, that congress had not declared the effect; but had merely prescribed the *mode* in which records, &c., should be authenticated; that declaring they should have, when *so* authenticated, such faith and credit given to them as by law or usage they have in the state where rendered, extended no further than to make them incontrovertible evidence of every thing that appeared by the record, *viz.*, that the judgment was recovered, by and against the parties named, for the sum and for the cause of action expressed; in the manner stated, i. e. whether upon default or trial, &c. &c.; that, in every other respect, they were on the footing of foreign judgments; which are *primâ facie* evidence of a debt; but it is competent to the defendant to show that such judgment was unduly or irregularly obtained.

THACHER, J. In this case, the demurrer confesses the facts stated in the pleas. By the law of *this* state, applied to these facts, the note mentioned in the judgment declared on would be void. The question then is, whether the judgment rendered as this was, in *another* state, has precluded the defendant from making, in the present action, the defence which he sets up in his pleas. I think not. And that the article in the constitution of the *United States*

(a) 1 *Cong.* 2 *sess ch.* 11.

and the act of congress, which have been cited, do not admit of the construction contended *for by the [ * 405 ] counsel for the plaintiff, but that the facts pleaded are by law pleadable; and as they would have been a legal bar to an action on the note, so they are, of course, to the present action of debt upon a judgment recovered in the state of *New Hampshire* on the note; and that the defendant is entitled to judgment.

SEWALL, J. By the rules of the common law, the judgment of a court of justice is a ground of action for the party recovering; and the judgment is itself evidence of a debt. 3 *Com. Dig. Debt.* A. 2. *Doug.* 1. The circumstances of the present case, however, require us to notice a distinction, which appears to be well established, between domestic judgments and foreign judgments. A domestic judgment, or one that has been rendered in the same court whose aid is required to enforce it, or within the same general jurisdiction, is, while existing unsatisfied, considered and observed as an incontrovertible proof of the debt, liable to no exception or inquiry. But a foreign judgment, though it may be declared on as a consideration from which a promise or debt of the party charged by it is implied or enforced, and though proof of the judgment alleged must be admitted as sufficient evidence, *primâ facie*, of the debt, yet it is not an incontrovertible proof. *Doug.* 6. This distinction, established by the decisions and practice of the superior courts of justice in *England*, has been adopted with us; and is warranted by sound reason, and the general principles of the common law. The extent of its application here, rather than the distinction itself, whether it extends to a judgment recovered in a court of any *other* state of the *United States*, when demanded as a debt within *this* state, has been the principal question contested in the case before us. The constitution of the *United States* has [ * 406 ] provided that full faith and credit shall be given, in each state, to the public acts, records, and judicial proceedings, of every other state; and that congress may, by general laws, prescribe the manner in which such acts, records, and proceedings, shall be proved, and the effect thereof. By a law of the *United States*, pursuant to this article of their constitution, the forms to be observed for the authentication of the records and judgments of the courts of justice within the several states have been directed; and it is thereby provided, that such records and judicial proceedings, so authenticated, shall have the same credit in every court in the *United States* as they have by law or usage in the courts of the state from whence such records shall be taken. And an act of the legislature of this state recognizes an action of debt as a process which may be brought within this state upon a judgment rendered by a court of record in any other

**of** the *United States.* (*b*)   Have these constitutional and legislative provisions placed judgments recovered in any court of record within every other state of the *United States,* upon the same ground, in all respects, with judgments rendered by a court of record within this state ?

My opinion is, that the effect of a judgment, that is, the rights of the party claiming under it, and the liability of the party charged by it, are not enlarged or affected by the constitution or law of the *United States,* or by the statute of this state.   The article cited from the constitution of the *United States,* and the act of congress pursuant to it, appear to me to be confined to the sole purpose of directing the modes of proof and the effect thereof, to be employed in authenticating records, when certified from one state to another, within the *United States.* And the statute of this state, in recognizing an action of debt as a proper process upon all judgments, whether recovered [ * 407 ] within *this state or any other of the *United States,* has not intended an alteration of the common law, or to give the same authority and effect to foreign judgments, which all judgments are allowed to have within the jurisdiction which renders them, or suffers them to remain in force.   I conclude, therefore, upon the whole, that a judgment certified from a court of record in any other state, when demanded as a debt within this state, is not an incontrovertible proof of such debt; and that the grounds of such judgment, when impeached by the defendant, may be on that occasion examined.

In the case before us, the demand of the plaintiff is for the amount of a judgment rendered by a court of record in the state of *New Hampshire ;* and it is averred that the defendant, the person nominally charged by the judgment, became accordingly indebted to the plaintiff.   This demand is answered by a plea which, if seasonably exhibited and confessed, as it now is, by the plaintiff's demurrer, would be sufficient, with us, to prevent such a judgment upon the original demand of the plaintiff against the defendant as we now are requested to enforce.   *Secondly,* the defendant alleges circumstances, likewise confessed by the plaintiff's demurrer, from which a want of notice in the original suit, and a want of capacity to defend against it, are necessarily inferred.   The process certified to us, and having, as evidence of a public record, the same faith and credit with us, as it would have in *New Hampshire,* shows that the judgment, of which the effect of a debt is demanded in this action, was rendered without actual notice to the defendant, or any appearance by him, or any guardian for him; he being at the time confessedly an infant under the age of twenty-one years.   Upon the

*b*) Act of Feb. 26, 1796. (*Stat.* 1795, *c.* 61, § 2.)

principles as well of natural justice as of the common law, a judgment liable * to these objections, must be [ * 408 ] determined to be no just or legal consideration, from which a promise or debt of the party, nominally charged by it, ought to be implied or inferred. This jurisdiction therefore will not enforce, as a debt, the judgment certified in this case against the pleas of the defendant, which, to the purpose of showing there is no debt, are a sufficient answer to the plaintiff's declaration.

SEDGWICK, J. This is an action of debt brought on a judgment recovered by the plaintiff against the defendant, in the state of *New Hampshire,* and the original action was brought on a promissory note. By the pleadings, it appears that the defendant, when the note was given, and until and at the judgment, was an infant; and that he was during all that time an inhabitant of this commonwealth. The judgment was rendered on default, and it does not appear that the defendant had personal notice of the suit; and we know it is not in *New Hampshire,* as it is in *England,* a prerequisite to the judgment.

The facts on which the defendant relies are disclosed by the pleadings, and the question is, whether such a judgment, so obtained, is conclusive evidence of a debt. If the judgment partakes of all the properties of a domestic judgment, it is so; otherwise we can extend relief to the defendant according to the justice of the case. This depends on the construction which shall be given to the 1st section of the 4th article of the constitution of the *United States,* and the act of congress made in pursuance thereof. The act of congress, after prescribing the mode in which " the public acts, records, and judicial proceedings in each state shall be authenticated," goes on to declare, "that the said records, &c. authenticated as aforesaid, shall have such faith and credit given to them in every court within the *United States* * as they have by law or usage in the courts of the [ * 409 ] state from whence the said records are or shall be taken." It will appear that as well the effect of records, &c., as their mode of authentication, is, by the constitution, within the authority of congress. What the effect shall be is not declared by the statute. It is indeed provided, that, being authenticated, they shall in all events have such faith and credit given to them as they are entitled to in the state from which they are taken. The meaning I take to be this, and no more; that they shall be incontrovertible and conclusive evidence of their own existence, and of all the facts expressed in them. The *act,* however, stops short of declaring

26

what shall be their effect; and congress have wisely left this to the judicial department.

As by our union a greater degree of comity is due to the proceedings of our sister states, than to those of states which are in every respect foreign, the *section* of the article of the constitution already mentioned declares that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings, of every other state." The precise extent of this "faith and credit" it is not necessary to define, in order to decide the present case; thus much, however, it seems to me is necessarily implied, that the courts of the other states shall never be charged with collusion, corruption, or a *mere* error of judgment. If it be true, in fact, that the judgments of the other states are to be considered, to all intents and purposes, as the judgments of courts in states which are merely foreign, then it will follow, irresistibly, that this provision of the constitution is altogether idle and insignificant—a conclusion which I should with reluctance draw as to any part of the constitution. If my construction be right, then it will result that wherever there has been a trial in another state, the judgment will [ * 410 ] be conclusive; * and, perhaps, it may not be going too far to say that if there be personal notice to the defendant, and on his part no disability, that the judgment shall be binding upon him; and it will, in all cases, on this construction, conclude the plaintiff. But I am decidedly of opinion that it would be going too far to say that a judgment of one of the other states should in all cases have the same effect as a domestic judgment; and the present case is, in my opinion, a strong instance to show that it should not. This is a judgment against a citizen of another state, without trial, without notice; and who, as well at the time of the judgment, as at the time of the contract alleged, was an infant. To this judgment I give "full faith and credit;" but although I do this, I cannot say that I think it binding on the defendant; and the mischiefs of such a determination would be incalculable. It is well known that many of the states, of which *this* is one, proceed to final judgment without requiring the appearance of the defendant, or even personal notice to him. The return of an officer of summons left with the defendant's agent or attorney, or at the last and usual place of the defendant's abode, is sufficient authority to the Court to proceed to a judgment. An officer may be mistaken; he may act by collusion; or, if neither, notice may never reach the defendant; that defendant may be an inhabitant of the most distant state. Shall he be bound by the judgment, conclusively? It would be monstrous. I am, therefore,

302

BARTLET *vs.* KNIGHT.

clearly of opinion that the pleas in bar, here, are sufficient, and that there must be

*Judgment for the defendant.* (1)

*P. Mellen* and *Hubbard* for the plaintiff.

*Parker* for the defendant.

NOTE.—In the case of *Noble* vs. *Gold*, (which was decided some years since in this court in *Berkshire*,) where the defendant pleaded *nil debet* to an action of debt brought upon a judgment recovered in * the state of *Vermont*, to which plea there was a general demurrer, the court decided [ * 411 ] that the plea was bad. In that case, they held, and expressly said, that, by the constitution and law of the *United States*, the judgments of the courts of record in the several states were placed, in all respects, upon the same footing with our own domestic judgments.

(1) The clause in the constitution of the *United States*, and the act of congress passed in pursuance thereof, have been the subject of much discussion and of some contrariety of opinion.

Since the elaborate examination of the subject in the case of *Bissell* vs. *Briggs*, vol. ix. 462, the question may, perhaps, be considered at rest in this commonwealth, but as the court were divided in their opinions upon that occasion, it may not be amiss to refer to some of the principal decisions in other states.

### 1 *Dal.* 261, *Phelps* vs. *Holker*

In an action brought before the Supreme Court of *Pennsylvania*, the court were of opinion that a judgment rendered in the county of *Hampshire*, in this commonwealth, (*Massachusetts*,) the defendant not having been served with personal notice of the suit, " was not conclusive evidence of a debt." The suit was by foreign attachment, under what is commonly called the *trustee act*, and the only service *upon the defendant* was by the attachment of a blanket shown to the sheriff as his *reputed* property. There was no appearance for the defendant, and, at the second term, judgment was entered against him by default. The case is very imperfectly reported, as it is not stated how the question arose, but merely that it was stated for the opinion of the court. Some of the judges seem to have entertained the erroneous opinion that, by the statute of this commonwealth, the judgment and execution in a foreign attachment go only against the goods attached. It does not appear by the report of this case whether the court would allow any, and if any, *what* weight to a judgment thus obtained, it being only decided that such judgment is not *conclusive*. The reporter considers the opinion of the court as being forfeited by the circumstance that congress in 1777 rejected a motion to add to the clause in the articles of confederation that " full faith and credit shall be given," &c., " and an action of debt may be commenced in a court of law of any state, for the recovery of a debt due on a judgment of any court in any other state, provided the judgment-creditor shall give bond with sufficient sureties before the said court in which the action shall be brought to answer in damages to the adverse party, in case the original judgment shall be afterwards revised and set aside, and provided the party against whom such judgment may have been obtained, had notice of the service of the original writ upon which such judgment shall be founded."

It is difficult to perceive how a *rejected* motion, and especially when the grounds of the rejection do not appear, can be called in aid of the interpretation of any legislative act. In this case it is presumed the reporter had chief reference to the provision for personal notice to the defendant, contained in the conclusion of the proposed amendment. But congress *refused* to adopt that provision, and that refusal (if any inference could be drawn from it) would rather tend to invalidate than to confirm the opinion of the Supreme Court of *Pennsylvania*, that a judgment without such notice is inconclusive.

#### *Armstrong* vs. *Carson's Executors*, 2 *Dal.* 302.

In the year 1794, the Circuit Court of the *United States* for the *Pennsylvania District*, refused to admit the plea of *nil debet* to an action upon a judgment rendered in *New Jersey*. In this case it does not appear whether the defendant had been served with personal notice of the suit. The cause seems to have been decided upon the general ground that by the act of congress the record must have the same effect in the court where the action founded upon it is brought, as in the court from which it was taken.

#### *Hitchcock* vs. *Fitch*, 1 *Caines*, 460.

The Supreme Court of the state of *New York*, in a case very elaborately considered, decided, three judges against two, that a judgment obtained in *Vermont* upon regular service of process and by a verdict of a jury, was only *primâ facie* evidence of a debt.

LIVINGSTON, J., who differed from the majority of the court, seems to be of opinion that "congress has nothing to do with the effect of domestic judgments." By *domestic judgments* the learned judge explains himself to mean judgments recovered in any of the *United States*. He thinks that it having been provided by the constitution that *full faith and credit* shall be given to these judgments, and this provision having established their validity, it is extraordinary that it should be left to congress to vary their operation. He is therefore of opinion that the "*effect*" spoken of in the 4th article refers to the mode of proof to be prescribed by congress, that being its immediate antecedent, and he seems inclined to think that such is the true intent of the act of congress.

The learned judge, notwithstanding his favorable inclination in favor of *domestic judgments*, is of opinion that the sentence of a court obtained without personal notice and in defiance of the maxim "*Audi alteram partem*," deserves not the name of a judgment, and does not come within the intendment of the constitution.

#### *Kilburn* vs. *Woodworth*, 5 *Johns. N. Y. Rep.* 37.

An action of debt was brought in *New York* upon a judgment recovered in *Berkshire, Massachusetts*. Plea, *nil debet*. The defendant was permitted to prove that he was an inhabitant of the state of *New York*, and actually resident therein at the time of the commencement of the original suit in *Berkshire*, of which he had no personal notice. The service had been made by the attachment of a bedstead, and giving a summons to the defendant's wife. The *Chief Justice* who tried the cause, refused to suffer the exemplification of the record to be given in evidence, and the plaintiff was nonsuited. A motion to the court to set aside this nonsuit was afterwards overruled. The court were of opinion that "to bind a defendant personally by a judgment when he was never personally summoned, or had notice of the proceeding, would be contrary to the first principles of justice." *English* cases relating to *foreign* judgments are cited, in the opinion of the court, who seemed to make no distinction between *such* judgments and the one in question.

#### *Hubbell* vs. *Coudrey*, *Ib.* 132.

In a subsequent case the same court adjudged the statute of limitations (it is presumed of the state of *New York*) to be well pleaded to an action of debt upon a judgment rendered in the state of *Connecticut*. The decision is founded upon the ground that *the judgment must be considered as a simple contract*.

#### *Robinson* vs. *Executors of Ward*, 8 *Johns.* 86.

An action of debt was brought on a judgment obtained in *Vermont*. The declaration alleged the recovery of a judgment by the plaintiff in a suit wherein one *M.* was defendant, and in which *W.* (the present defendant) was bail, and that such proceedings were afterwards had that judgment was recovered against the testator of the present defendants in the same court. On the trial it appeared that the plaintiff had recovered a regular judgment in *Vermont* against *M.* after personal service; that an

attachment was, on the motion of the plaintiff, issued to the sheriff, commanding him to attach the property of the testator, (the bail to notify him of the same ;) and if no property could be found, to take the body of the testator, and to have him, &c., to *show cause* why the plaintiff should not have his writ of execution against him, &c. The sheriff returned, that at the house of *L. B.*, in *B.*, he had attached some trifling articles certified to him as belonging to *W.*, *late* of said *B.*, and had left a copy, &c., at the *last* usual place of abode of said *W.*, in said *B.* A verdict was rendered for the plaintiff, subject to the opinion of the court on a case stating the above facts.

Upon a motion for that purpose this verdict was set aside by the court. They said that although it was not positively stated, it was evident that *Ward* was not at the time of issuing the attachment a resident within the state of *Vermont*, or the jurisdiction of the court; and that at all events there was *no personal service or actual notice*. And whether the proceedings were valid, and according to the course of the court where such judgment was obtained, would make no difference according to the case of *Buchanan* vs. *Rucker*, 9 *East*, 192; that the principle on which these decisions (that in *Buchanan* vs. *Rucker*, and that in *Kilburn* vs. *Woodworth*) turn applies to the present case, notwithstanding that *Ward* was sued as *bail* in *Vermont;* that the proceedings there were in the nature of a new suit, in which, as he might have a defence, there was as much reason for his having notice as in any other case.

## *Tayler* vs. *Bryden*, 8 *Johns.* 173.

An action of *assumpsit* was brought in the Supreme Court of *New York* on a judgment obtained in *Maryland* against the defendant as endorser of a bill of exchange. The defence was want of notice. It does not very clearly appear from the report what part of the evidence stated in the case was given in *Maryland*, and what part in *New York*. In giving the opinion of the court, his honor, the *Chief Justice*, does not seem (as the present editor would submissively remark) to have settled any general principles by which cases of this sort are to be governed. By some parts of his opinion, a reader would perhaps be justified in supposing that he was at least inclined to go the length of holding, that in all cases where there had been in any state, after sufficient notice, a fair and regular trial of the merits of a cause before a jury, that trial was to be decisive, and not subject to revision before any other tribunal.

" The judgment in *Maryland*," says the *Chief Justice*, "is presumptive evidence of a just demand ; and it was incumbent upon the defendant, if he would obstruct the execution of the judgment here, to show, *by positive proof, that it was irregularly or unduly obtained.*

" To try over again, as of course, every matter of fact which had been duly decided by a competent tribunal, would be disregarding the comity which we justly owe to the courts of other states, and would be carrying the doctrine of reëxamination to an oppressive extent. It would be the same as granting a new trial in every case, and upon every question of fact. Suppose a recovery in another state, or in any foreign court, in an action for *tort*, as for an assault and battery, false imprisonment, slander, &c., and the defendant was duly summoned and appeared, and made his defence, and the trial was conducted orderly and impartially, according to the rules of a civilized jurisprudence, is every such case to be tried again here upon the merits ? The general rule of the books is that the defendant must *impeach* the judgment, by showing, affirmatively, that it was unjust by being irregularly or unfairly procured."

The learned judge, after proceeding to state " that the court, in which he was then sitting, in a former case, (*Hitchcock & Fitch* vs. *Aickin*, 1 *Caines*, 460,) went no further than to decide the general principle that the judgment of another state was not conclusive, but was to be placed on the footing of a foreign judgment, under the *English* law," goes on to observe, that " the question is, How far do the *English* courts permit *foreign* judgments to be opened to let in a reëxamination of the merits ? " He then says that " in the present case the defendant has certainly not succeeded in impeaching the judgment. He has at most only excited doubts, under the obscure and perhaps very imperfect testimony before us, as to the fact of due diligence in giving notice of the protest for non-payment. And where a party has once litigated his case before a competent jurisdiction, and when no fraud or unfairness is pretended, *every doubt and every presumption* in matter in *pais* ought to be turned against him." His honor then notices with approbation the observation of Lord *Kenyon*, (*Gilbraith* vs. *Nevil*, 5 *East*, 475,) that " without entering into the question how far a foreign judg

ment was impeachable, it was, at all events, clear that it was *primâ facie* evidence ot the debt, and that no evidence had been adduced to impeach this."

### *Fenton* vs. *Garlick*, 8 *Johns.* 194.

When a judgment was obtained in *Vermont* against *A. B.*, as principal, and *C. D.*, as his trustee, in a process of foreign attachment, wherein *C. D.* had had notice, and afterwards *C. D.*, the trustee, removed into the state of *New York*, and while resident in this latter state, he was served with notice of a writ of *scire facias*, upon which a judgment was rendered against him personally in *Vermont*, upon which judgment this suit was afterwards brought in *New York*.

The court (rather fancifully) suggested that the judgment was in the nature of one founded on the suggestion of a *devastavit* committed by the defendant in the character of trustee. They said that he was entitled to an opportunity to show in what manner he had disposed of the *assets*; that this opportunity he had never had, because the service upon him was void, not only upon general principles, but by the express words of a statute of *New York*.

### *Kibbee* vs. *Kibbee*, *Kirb.* 119.

In a case before the Superior Court of *Connecticut*, service of a writ issuing from the Court of Common Pleas in *Berkshire, Massachusetts*, was attempted to be made upon the defendant by attaching a handkerchief shown as his property to the sheriff by the plaintiff's attorney, and by *sending* a summons to his dwelling-house in the *county of Hartford, in the state of Connecticut*. The proof of the fact of leaving the summons at the defendant's house, was by the certificate of a magistrate of the county of *Hartford*, that two persons had sworn before him that they had left the summons. This certificate was written upon the back of the writ, with the officer's return, stating the attachment, and that he had seasonably sent a summons.

The court were of opinion that the court in *Massachusetts* had no legal jurisdiction of the cause, and, therefore, no action could be sustained upon the judgment. They said that "full credence ought to be given to judgments of the courts in any of the *United States*, where both parties are within the jurisdiction of such courts at the time of commencing the suit, and are duly served with the process, *all which, with the original cause of action, ought to appear by the plaintiff's declaration in action of debt upon such judgment*."

This case the editor has stated more at large, than he otherwise would, from the singularity of its circumstances, and of the mode of declaring thought necessary by the court.

### *Curtis* vs. *Gibbs*, 1 *Pennington's New Jersey Reports*, 399.

An action of debt was brought in *New Jersey*, upon a judgment rendered in the state of *Pennsylvania*, *upon a process of foreign attachment*. This last circumstance does not appear in the statement of the case, but is collected from the opinion of the court. The case came before the court upon a demurrer to a plea of *nil debet*.

PENNINGTON, J., in a very labored opinion, lays down the doctrine that by the constitution of the *United States*, and the law of congress, the judgments rendered in any state are to have the same *credit* (which, in the opinion of the learned judge, is synonymous with the same *effect*) in any other state as in that where the judgment was first rendered. "*Nil debet* to a declaration on a judgment so obtained would be a bad plea," and that " no doubt can be entertained but that a judgment obtained in one of these courts in a *regular course of the common law, on both parties being in court and a defence made or an opportunity to make it*, would be conclusive evidence of a debt." Whether the circumstances of the judgment being given according to the course of the common law, and the defendant being in court, (for the *plaintiff* is of course there,) are essential to the validity of the judgment, does not appear from the report of the learned judge of his own opinion. It would, however, seem not, for he considered the judgment of the court in *Pennsylvania* as precisely upon the same footing as if sued in that state, and rested his opinion that the plea of *nil debet* was good upon the ground that the judgment, having been rendered upon a foreign attachment, would not be conclusive evidence of a debt in the courts of *Pennsylvania*

BARTLET *vs.* KNIGHT.

### James vs. *Allen,* 1 *Dal.* 188.

SHIPPER, J., expresses his opinion " that the articles of confederation which direct that full faith and credit shall be given in one state to the records, acts, and judicial proceedings, of the others, will not admit of the construction contended for by the plaintiff, otherwise executions might issue [in one state] upon the judgments in another; but seem chiefly intended to oblige each state to receive the records of another as full evidence of such acts and judicial proceedings."

### *Millur* vs. *Hall, Ib.* 229, and *vide* the cases there cited, and *Ib.* 192, in *James* vs. *Allen.*

It was decided in the Supreme Court of *Pennsylvania* that the plaintiff, an inhabitant of *Pennsylvania,* could not hold the defendant, an inhabitant of *Maryland,* to bail in an action the cause of which accrued in *Pennsylvania,* he (the defendant) having obtained his discharge under an insolvent law of *Maryland.*—*Vide,* con. 1 *Mass. Term Reports,* 198.

The doctrine of some of these decisions seems to be that in no case is the record of a court in a sister state to be entitled to more consideration than a judgment rendered in a foreign kingdom. It is much less obligatory than the decision of a foreign court of admiralty. It must be confessed that the question is encumbered with very serious difficulty. On the one hand, the intimate relations subsisting between the several states, and the similarity of their laws, seem to require that they should respectively pay greater respect to the adjudications of the courts of each other than to those of foreign tribunals. Unless this is done, *the provision of the constitution seems to be entirely nugatory,* as does also the law of congress, excepting so far as relates to the forms of authentication. On the other hand, if the judgments of one state are to be deemed *absolutely conclusive* in every other state of the Union, it is apparent that great injustice might result from the establishment of such a principle. To this length it is contended the principle must be carried. For the article in the constitution declares that " full faith and credit shall be given in each state to the public acts, &c., of every other state," and that congress may prescribe the effect thereof; and the act of congress, made in pursuance of this article of the constitution, provides that these public acts, &c., " shall have such faith and credit given to them in every court within the *United States,* as they have by law or usage in the courts of the state from which they are or shall be taken;" and the construction of those who may be called the friends of these judgments is, that the same faith and credit which they have in the courts of the state from which they are taken, *is a faith and credit sufficient to produce the same effect* which would be produced in the courts where they were originally rendered. Now, a *domestic* judgment of a court of competent jurisdiction, remaining unreversed, is absolutely conclusive, even though error should be apparent upon the record. If the construction last mentioned should be adopted, it would seem to go the full length of establishing the validity of judgments where personal notice of the suit had not been given to the defendant.

Is there any middle ground between considering these judgments as conclusive wherever actions are brought upon them, and putting them upon a footing with judgments of foreign tribunals? If, for instance, in a suit instituted in *Vermont,* there should be a *good* plea in bar, and upon demurrer judgment should be entered for the plaintiff, could this erroneous judgment be enforced in *Massachusetts?* Or suppose the plea bad by the laws of *Vermont,* and good by those of *Massachusetts,* and the defendant an inhabitant of the latter, in which the cause of action originated?

The editor ventures to express no opinion upon this important subject, but as it is of frequent occurrence, he hopes a reference to the principal cases relating to it will not be unacceptable to the profession.—[*Jacobs* vs. *Hull,* 12 *Mass.* 25.—*Commonwealth* vs. *Greene,* 17 *Mass.* 545, 546.—*Mills* vs. *Durfee,* 7 *Cranch,* 481.—*Hampden* vs. *Connell,* 3 *Wheat.* 234.—*Mayhew* vs. *Thatcher,* 6 *Wheat.* 129.—*Borden* vs. *Fitch,* 15 *Johns.* 121.—*Andrews* vs. *Montgomery,* 19 *Johns.* 162.—*Rogers* vs. *Coleman, Hardin,* 413.—*Taylor* vs. *Phelps,* 1 *Gill. and Johns.* 492.—*Shumway* vs. *Stillman,* 6 *Wend.* 447.—*Hall* vs. *Williams,* 6 *Pick.* 232.—*Woodward* vs. *Tremere,* 6 *Pick.* 354.—*Thurber* vs. *Blackborne,* 1 *New Hamp.* 246.—ED.]